SAMUEL, Judge.
Plaintiff instituted this suit for pension benefits against three alleged employers, New Orleans Public Service, Inc. (NOPSI), Norco Construction Company, Inc., and Middle South Utilities, Inc. Middle South was dismissed on a motion for summary judgment (from which no appeal was taken and which is now final) and the matter was tried on the merits as to the other two defendants. Following trial, judgment was rendered dismissing plaintiff’s suit.
Plaintiff has appealed. In this court he only contends the trial court erred in not finding him an employee of NOPSI.
The following facts are uncontested. From 1935 until May 26, 1945, following his advancement to supervisory status, plaintiff was employed by NOPSI in the gas department. During that time he was a participating member of the NOPSI retirement program. He then resigned to enter another business, withdrew his pension contributions, and thereafter made no further pension contributions. From 1945 to 1951 he was a self-employed building contractor.
In connection with its obligation to render gas services, at one time NOPSI gas department had laborers on their own payroll. However, for economic reasons, the company decided to hire laborers on an “as needed” basis and engaged Norco Construction Company, a corporation specializing in providing day laborers to various corporations, to provide them with persons capable of doing general laboring work. In 1951 Norco, which had a cost plus contract with NOPSI to provide these services since mid 1940, was in need of a new'man to manage its New Orleans business (at this time consisting solely of NOPSI [1]) and the NOPSI general manager recommended plaintiff for that position.
Norco engaged plaintiff under an oral contract whereby he was to supply all needed gas crewmen. NOPSI set the rate it was willing to pay the laborers which Norco provided and wás in turn billed by Norco on a cost plus basis. Plaintiff was paid on a commission basis by Norco, receiving 40% of the billings, with Norco retaining 60%.
The laborers supplied by Norco worked under the direction of NOPSI supervisors, who kept records as to the days and hours each man worked, turning the weekly records over to plaintiff who, each Wednesday, took this information to Norco where the *684 employees’ payroll checks were made. Plaintiff distributed the Norco checks to the laborers on each Friday.
From 1951, when he was engaged by Norco, until January 1, 1976, when he retired, plaintiff was paid by checks from Norco. He paid his own social security taxes, provided his own automobile, made no pension plan payments to either Norco or NOPSI, and considered himself self-employed for income tax purposes.
It appears from the record that up to one year prior to plaintiff’s retirement, the NOPSI pension plan required contributing payments by its employees who chose to be members of the plan. However, in 1975 the plan was changed and members were not required to contribute to the cost of their pensions. Since his withdrawal from the plan in 1946, plaintiff made no effort to reactivate any pension rights he may have had with NOPSI under the contributory plan, nor was he a contributing member of any Norco retirement plan.
It is plaintiff’s position that: (1) Because the new NOPSI non-contributory retirement plan went into effect prior to his retirement from Norco as a result of having reached retirement age, he is entitled to pension benefits for the period from 1951 to January 1,1976; and, alternatively, (2) he is entitled to a pension under the Federal Employee Retirement Income Security Act.
Relative to his first contention, plaintiff argues he was an employee of NOPSI even though all of his pay was received from Norco because he was “indirectly hired” by NOPSI through its general manager’s recommendation; NOPSI provided him with a telephone and a desk where he reported daily, and all of the work done by him was for the benefit of, and supervised by, NOP-SI.
Plaintiff testified he employed laborers wherever he could find them, did some typing at his home starting from there at 7 a. m. each day, and was in the field four days per week, going to Norco on Wednesday. He received instructions from NOPSI as to the number of men required. If NOPSI was dissatisfied with a laborer he was asked not to rehire him. NOPSI supervisors did not have to accept any laborer he sent them, and he did not supervise the laborers, he only hired them. Plaintiff conceded he never received a pay check from NOPSI subsequent to 1951, nor any benefits to which NOPSI employees were entitled, such as vacation with pay and paid holidays.
The trial court found that “plaintiff was either self-employed or a Norco Construction Company employee. He was not an employee of New Orleans Public Service Inc.” The record fully supports that conclusion.
Relative to plaintiff’s second contention, that he is entitled to a pension under the provisions of the Federal Employee Retirement Income Security Act (29 U.S. C.A. § 1003) which became effective January 1, 1975 and which supercedes state laws on the subject, he argues he is an employee of NOPSI as defined in that federal act as follows:
29 U.S.C.A. Sec. 1002(6) “The term ‘employee’ means an individual employed by an employer.”
and Code of Federal Regulations Title 29, Section 788.16(a), which provides:
“The Supreme Court has made it clear that there is no single rule or test for determining whether an individual is an employee or an independent contractor but that the ‘total situation controls’
No federal law to which we have been cited, and we know of none, requires a corporation to provide pension benefits to a person who is not an employee of that corporation, and in carefully examining the total situation of plaintiff relative to his duties from 1951 to 1976 we cannot conclude that he was an employee of New Orleans Public Service, Inc., and thus entitled to pension benefits from that corporation.[2]
*685 For the reasons assigned, the judgment appealed from is affirmed.

a AFFIRMED.

. Later Louisiana Gas Service, Inc., another independent subsidiary of Middle South Utilities, was an added customer from 1953 to 1963.

. The benefits which plaintiff seeks are:
1) $465 per month; 2) medical insurance benefits of $54 per month; 3) a $9,000 paid-up life insurance policy with the right to purchase coverage up to $30,000 for a premium of $0.63 per month per thousand; 4) reasonable attorney’s fees.